## BARNARD REALTY CO. v. NOLAN.

(District Court, D. Montana. July 25, 1914.)

No. 108.

1. MINES AND MINERALS (§ 38*)—PLACER PATENT—LODE LOCATIONS—EVIDENCE.

In a suit to quiet title to plaintiff's placer location, evidence *held* insufficient to warrant a finding that lodes subsequently located, under which defendant claimed, were "known to exist" at the time plaintiff's placer patent was applied for.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 87½–113; Dec. Dig. § 38.*]

2. ESTOPPEL (§ 22*)—GROUNDS—PLACER PATENT—DESCRIPTION.

That a placer applicant prior to the application acquired title by deed describing the land as being "where the Original lode crosses said gulch," but the "Original lode" was the name of some 30 200-foot claims asserted along the supposed strike of the lode each way from a discovery 2,100 feet east of the land in controversy, not marked or developed save at discovery, and existing only by virtue of the discovery and in a location notice filed with a miner's recorder, such description was insufficient to estop the placer claimant to deny that there was a known lode within the limits of his placer location at the time he applied for a placer patent.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 27–51; Dec. Dig. § 22.*]

3. MINES AND MINERALS (§ 16*)—PLACER PATENT—"KNOWN LODE."

Float, outcroppings, lodes, and abandoned locations, separately or together, are not sufficient to constitute a "known lode" within the exclusion of the placer mining law, but to be impressed with such character, the lode at the time of the application for placer patent must be clearly ascertained and defined, and of such extent and content that it will then, in view of conditions then existing, justify development and exploitation,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and because of which the placer claim is valuable and more valuable than for placer mining.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 21–23; Dec. Dig. § 16.*

For other definitions, see Words and Phrases, vol. 5, pp. 3944, 3945; vol. 8, p. 7700.]

**4.** MINES AND MINERALS (§ 38*)—PLACER PATENT—INCLUDED LODES—LIMITATIONS.

Since a patent to a placer mining claim does not pass title to a known lode within the limits of the placer claim at the time of the application, limitations will not run against the right of a lode claimant as against those claiming under the placer patent.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 87½–113; Dec. Dig. § 38.*]

**5.** MINES AND MINERALS (§ 38*)—PLACER LOCATIONS—QUIETING TITLE—RES JUDICATA.

A judgment for plaintiff, in a suit to quiet title to a placer location as against conflicting lode claims, is not res judicata as against the United States and persons not parties, who may relocate and relitigate the question whether they were "known lodes" at the time of the placer application for patent.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 87½–113; Dec. Dig. § 38.*]

In Equity. Suit by the Barnard Realty Company against Joseph P. Nolan. Decree for complainant.

E. B. Howell, of Butte, Mont., for plaintiff.

William Scallon, of Helena, Mont., and Timothy Nolan and Louis P. Donovan, both of Butte, Mont., for defendant.

BOURQUIN, District Judge. Suit to quiet title, a quartz-placer controversy. Plaintiff's placer patent was applied for on October 1, 1873, and upon the land conveyed by the patent defendant's six lode locations were made in October, 1912. Were these lodes or any of them known to exist on the date first mentioned? The burden is on defendant to establish the affirmative. He has failed and the court finds for plaintiff.

Briefly, from the evidence it appears that the land was a typical gulch placer gold claim, worked in a crude and limited way for several years prior to the application, and more effectively and extensively thereafter. It was in the vicinity of Butte, Mont. When surveyed for patent a careful examination for lodes was made, and one only was found and excluded. Practically all surrounding land was unclaimed public land, and so valueless that the placer applicant, instead of extending his boundaries, contracted them so that he would pay for no land but that having value for placer deposits. At that time the placers that first lured miners to the vicinity were on the wane, and Butte had only about 40 inhabitants. The lode outcroppings attracted some attention as early as 1865, and some lode locations were that early made. Save in a few isolated instances lode locations were made, abandoned, relocated, and again abandoned. Little development was done, the lodes were generally condemned as valueless, and this continued until a revival of interest in lode mining or prospects came in 1874 and 1875. When the

patent here involved was applied for Butte was "frontier" in all the term implies. More than 400 miles from a railroad, with scant two score inhabitants, without developed lode mines and ore reduction plants, lacking the advanced knowledge of geology and kindred sciences possessed to-day, Butte's lodes that subsequently made her the greatest mining district in the world, and which from a part thereof or approximately six square miles in less than 40 years have produced more than $1,000,000,000, in gold, silver, copper, and zinc and more than produced by any equal area on earth in all time, were rejected and of no recognized worth.

Of some half score witnesses having some acquaintance with the vicinity and this land at the vital date, all save two testify that upon this land no lodes were known. These two are defendant's only witnesses. One of them testifies, in substance, that about 1865 or 1866 in two trenches excavated upon this land for placer mining, bedrock was reached, and therein ledge matter or two several lode outcrops were exposed; that at another point on or near this land "in the 70's" he saw "indications of a lead" that "indicated simply ledge matter." It may be noted here that whether the aforesaid trench exposures continued a day or a year, the trenches had been filled and the bedrock recovered by débris, due to the gulch stream and the elements, long prior to this application, and the applicant knew naught of them. The other likewise testifies to one visit in 1867 to the neighborhood, and possibly upon this land at one or two points; that he was "convinced" a lode might be traced through the placer "from the broken float along" on the hillside above or on the placer, and where he "kicked down to where we considered was solid quartz." This may have been of one of the trench exposures aforementioned. This latter witness also testifies that on the east side of this placer, and perhaps upon it along the possible strike of a lode called the Original, he saw float "every 50 or 100 feet or such matter," though the "solid ledge did not crop out," and across the land and on the hillside and "in a direct line" he "saw the stains." Leading questions and conclusions not justified by the facts they testify to impair the value of these witnesses' testimony. They, too, made or owned and abandoned lode locations, the former saying the lodes were "no good"; "everybody seemed to condemn them and think they were no good until 1874 or 1875."

[1, 2] But defendant contends that since the placer applicant prior to the application acquired title by a deed describing the land as being "where the original lode crosses said gulch," it must be accepted that this lode existed upon the land and was a "known lode" in that plaintiff cannot deny the landmarks in its claim of title. The Original lode was the name of 30 odd 200-foot claims asserted along the supposed strike of the lode each way from a discovery 2,100 feet east of this land, not marked nor developed save at discovery, and existing only by the discovery and on paper—in a location notice probably filed with the miners' recorder. As asserted, some of these claims crossed this land. These, too, were all abandoned save three or four at or near discovery. The deed is not evidence the lode was known to exist upon this land. Even a lode location upon this land by the placer applicant himself would not be conclusive. Neither deed nor location is even prima facie

evidence of a known lode, and are deprived of all value by evidence of a lode's nonexistence. The lodes located by defendant are claimed to be those testified to by his two witnesses aforesaid. They were in fact discovered in the bedrock when the placer deposits were removed by extensive work long subsequent to the patent application. That excluded from placer patents is not lodes, nor necessarily lode locations existing before but abandoned after the date of the placer patent application, but is *known* lodes.

[3] Float, outcroppings, lodes, and abandoned locations, separately or combined, are not sufficient to constitute a "known lode" within the exclusion of the placer mining law. To be impressed with such character the lode must, at the time of application for the placer patent, be clearly ascertained and defined, and of such extent and content that it will then, in view of conditions then, justify development and exploitation, and because of which the placer claim is valuable and more valuable than for placer mining purposes. Subsequent development, however marvelous the results, is immaterial if the lode be not thus "known" when the application for the placer patent is made. And the reason is lode outcrops exist everywhere in the mining country. Not one in hundreds develops into a profitable mine. Valueless, no reason exists to exclude them from public grants and patents, and such grants made and patents issued without excluding them prima facie lodes of value do not exist. See Iron Silver Case, 143 U. S. 405, 12 Sup. Ct. 543, 36 L. Ed. 201, and cases cited; Migeon v. Ry. Co., 77 Fed. 256, 23 C. C. A. 156.

[4] The proof, seeking to withdraw or exclude from a solemn grant of the government premises prima facie conveyed by it, must be clear and convincing, in quantity and quality that inspires confidence and produces conviction. The proof submitted by defendant near 41 years after the patent was applied for fails to attain this standard. He fails to make out a prima facie case. The land at the time the patent was applied for was valueless in so far as these lodes now claimed by defendant were concerned. None of them was then known to exist, was then a "known lode." Adverting to the contention of plaintiff heretofore made that it should be given the benefit of limitations applicable to suits to vacate patents, with reluctance the court denies it. Regretable as it is for the sanctity of a solemn grant of lands by the United States and for the certainty and definiteness that should attach thereto and for the stability of titles evidenced thereby, the settled course of decision by the Supreme Court of the United States is that patents like unto this, though prima facie conveying all lands within the placer boundaries therein described and for all of which the patentee paid, convey no title, defeasible or otherwise, to lodes known to exist when the patent is applied for; that such lodes, though unidentified and undefined, are excepted and excluded from the patent, title to them remains in the United States, and at any time thereafter they may be, and by strangers to the patent, possessed, located, and patented even as any other lode upon public lands.

[5] In consequence, if after a placer patent has issued the first attempt to so secure lodes within the placer alleged to be "known" lodes fails, if a suit like this determines the lodes were not "known lodes"

when the patent was applied for, the patentee is not thereby confirmed in his title, for the decree is not res judicata in respect to the United States and persons not parties; and such persons can relocate the lodes and relitigate the issue, again and again, ad infinitum. Or suit after suit may succeed and lode after lode be carved out of the patent until the whole is gone and the patentee has but his paper grant, a delusion and a snare, conveying nothing. For if no title to the lode passes by the placer patent, if it wholly remains in the United States, neither laches nor limitation can vest title in the patentee.

The construction so placed upon the placer mining statute seems at variance with that upon analogous statutes, and not due to any marked differences between them. Under all of said analogous statutes it is held that though they prohibit the granting of lodes or mineral lands, yet a patent is, save in cases of fraud, a conclusive determination, made by a special tribunal having jurisdiction to determine, that the land conveyed contains no lodes or mineral lands; that in any case the patent conveys the lands, though mineral or containing lodes, but by defeasible title if secured by fraud; that in all cases the title is valid against all the world save that when secured by fraud the United States by a direct suit may annul the patent and divest title, *provided* suit be brought within six years of the patent's date.

No sound reason appears why this limitation should not here apply, save the decisions aforesaid and this court's duty to follow them. Hence, despite the lapse of near 41 years since application, the necessity to hear witnesses and upon their testimony ascertain what this patent conveyed or did not convey, determined by what the witnesses recollect they saw or could have seen or did or did not see upon the premises involved at the date of application aforesaid. The determination is for plaintiff, decree accordingly, but non constat plaintiff may not be compelled again to try the issue.