CLARK MONTANA REALTY CO. v. FERGUSON et al.

(District Court, D. Montana. December 31, 1914.)

No. 18.

1. MINES AND MINERALS (§ 9*)—PLACERS—PATENT—INCLUDED LODES.

Where proof, on application for a placer patent, shows known existing lodes within the placer claim, they are excluded from the placer patent, and the patentee enters and pays for only the net area of his placer claim, which alone is conveyed, but, if the proof is that lodes are not known to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1307 to date, & Rep'r Indexes

exist within the placer claim, the applicant enters and pays for the entire area, and patent issues to him, conveying the whole, the Land Department inserting in the patent an exception that, should any lode be known or claimed to exist when patent is applied for, it is excepted or excluded, though not defined, from the grant, and since lodes known to exist are excepted from the placer grant, title continues in the name of the United States, and they are open to location as lodes in public land by any one at any time.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 9–13; Dec. Dig. § 9.*]

2. MINES AND MINERALS (§ 38*)—PLACER CLAIM—INCLUDED LODE LOCATION—BURDEN OF PROOF.

The burden is on claimant of a lode within a patented placer claim to prove that the lode was known to exist when the placer patent was applied for, by clear and convincing evidence, which inspires confidence to produce conviction.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 87½–113; Dec. Dig. § 38.*]

3. MINES AND MINERALS (§ 38*)—PLACER PATENT—LODE LOCATION—PROOF.

To establish that a lode was known to exist within the boundaries of a placer claim when the placer patent was applied for, it must be shown that at that time the lode was clearly ascertained and defined, and of such known existence and content that, in view of all circumstances and conditions affecting its worth, such as the importance locally attached to like lodes under similar conditions, ease or difficulty of development, facilities for ore treatment, cost of mining and reducing ores, reasonable probabilities of development, etc., so that it would have justified development and exploitation, and because of which it, and the area attaching to or excluded with it, were more valuable than for placer mining.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 87½–113; Dec. Dig. § 38.*]

4. MINES AND MINERALS (§ 43*)—PLACER PATENT—INCLUDED LODE—"KNOWN TO EXIST."

Float, outcrop, lodes, and abandoned locations, separately or combined, within the limits of a patented placer claim, are not sufficient to constitute a lode "known to exist," within the exception of the placer patent.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 125–129; Dec. Dig. § 43.*]

5. MINES AND MINERALS (§ 43*)—PLACER PATENT—INCLUDED LODE.

Whether a lode within the limits of a patented placer claim was known to exist, so as to except it from the placer patent, must be determined by the conditions as they were when the placer patent was applied for, and hence subsequent development and results, however marvelous, are immaterial.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 125–129; Dec. Dig. § 43.*]

6. MINES AND MINERALS (§ 38*)—PLACER PATENT—INCLUDED LODE.

On an issue as to whether a lode within the limits of a prior placer patent was known to exist, and therefore excluded, evidence of annual labor performed by defendants on the lode claim and their good faith is immaterial, since if the lode was not known to exist when the placer patent was applied for, defendants' good faith cannot aid them, and if known to exist, their bad faith would not deprive them of their right to the claim under the exception in the placer patent.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 87½–113; Dec. Dig. § 38.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. Mines and Minerals (§ 38*)—Placer Claims—Included Lode—Exist-
ence—Knowledge—Evidence.

Evidence *held* insufficient to warrant a finding that a lode was known
to exist within the limits of a patented placer claim at the time of the ap-
plication for the placer patent.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 87½–
113; Dec. Dig. § 38.*]

In Equity. Suit by the Clark Montana Realty Company against W.
H. Ferguson and others. Decree for complainant.

Geo. F. Shelton, Fred J. Furman, and A. J. Verheyen, all of Butte,
Mont., for plaintiff.

Gunn, Rasch & Hall, of Helena, Mont., and W. I. Lippincott, of
Butte, Mont., for defendants.

BOURQUIN, District Judge. This is a quartz placer controversy.
Plaintiff's placer patent was applied for by its predecessors in inter-
est on July 18, 1879, and upon part of the land conveyed by it defend-
ants' Zeta lode claim was located on January 1, 1901. Defendants
have failed to establish that this lode was "known to exist" when the
placer patent was applied for, and so plaintiff is awarded decree quiet-
ing its title.

Amongst several witnesses presented by defendants, only two, Bax-
ter and Yountz, prior to or on July 18, 1879, had any acquaintance
with visible conditions upon the premises involved. Their acquaint-
ance was casual, limited, slight; their recollection somewhat general,
vague, and uncertain. In substance Baxter testified that in the spring
of 1878, passing, he saw in the vicinity of some visible outcrop some
men prospecting in a small hole 3 feet deep, wherein he saw what
"looked like pretty good quartz." This was 100 feet, or 40 or 50 feet,
east of a road now a city street, and he believes somewhat doubtfully
that a certain old hole or shaft about 100 feet east of said street and
upon the Zeta lode, and the nearest to said street of several holes or
shafts thereon, occupies or is about the site of said prospect hole.

Yountz testified that in the spring of 1879 one Turner claimed the
premises, that he casually visited the same, and there saw "quartz and
ore," very little outcrop, and a hole 5 or 6 feet deep near 100 feet east
of the said road, and that is now the shaft referred to by Baxter. In
answer to a question whether he saw "evidence of a vein" in said hole
he said, "Yes," saw "quartz and iron," and that it was "pay ore,"
wherein he could see gold and silver with the unaided eye.

The premises involved were and are in the vicinity of Butte, Mont.
They are upon and near the foot of a gentle slope that, from the hills
in which are the great mines of Butte, descends a mile and a half to
Silver Bow creek. They were a valuable placer mine; one of de-
fendants testifying that he profitably worked them for placer gold.
Of evidentiary circumstances and conditions in 1879 little appears,
save that in the locality of the premises involved subterranean water
was within 8 to 10 feet of the surface, Butte was without railroads
and, until late in 1881, silver was worth around $1 per ounce, and ore
milling and smelting facilities were limited, the charges for treatment

being $30 to $60 per ton. How far the Butte district had progressed beyond its condition in 1873, described in Barnard v. Nolan (D. C.) 215 Fed. 997, is not disclosed, and neither party has asked the court to judicially notice facts of common or historical knowledge in relation thereto.

It is evident, however, all was yet relatively primitive, one witness for defendants testifying that the people of Butte did not then know the possibilities of the district, that they even considered Anaconda Hill (the richest on earth) worthless, and any one there working crazy, and that the concensus of opinion was that if the Alice mine (then the noted lode mine of the district and located upon the hills more than two miles from these premises) "went down" 500 feet, the "camp was good" for at least a short time. There is evidence that after the date of the application for the placer patent development disclosed that the Zeta lode is from 8 to 26 feet wide, and continuous for about 900 feet here involved; that numerous holes or shafts were sunk along it at a cost of more than $5,000; that in the surface workings the lode is of broken, disintegrated, and mixed matter, quartz, altered granite, talc, iron oxides, etc.; that what Turner did is unknown; that "in the early 80's" some one near the west end and about where Baxter saw men prospecting in 1878 sunk a shaft 60 feet deep and drifted therefrom, wherein Baxter saw a "vein in place," and they had some "pretty good ore"; that later Baxter was interested in a lode location made upon the premises in 1889, performed some annual labor upon it, and in 1894 from lessees received about $70 or one-third of 25 per cent. royalties; that defendants have continuously performed annual labor upon the Zeta lode; that therein in 1914 they extracted 4 tons of ore carrying 23 ounces of silver and $9.40 of gold per ton; that this was from the east end, and a winze wherein was one foot of ore; that the water was "too strong," and they quit work; that present samples from the Zeta discovery shaft, about 250 feet east of the said street, assayed from eight-tenths of an ounce of silver and 60 cents of gold per ton to 10.6 ounces of silver and 10 cents of gold per ton; that a great many lode claims were located in the vicinity of the premises, some prior to 1879, and since said date from some of them valuable ores have been mined, and perhaps profitably; that, since the placer patent issued, patents have also issued for 12 lode claims upon the premises by the placer patent conveyed; that in 1878 one of the placer patentees and others located a lode claim, which in 1879 was relocated by Turner, and that said locations were on the now Zeta lode; that the said placer patentee, and before whom the lode location in which he had a part was verified, had no knowledge thereof, save that it was one of scores wherein prospectors included him in consideration that he paid recording and other fees; that the Zeta lode presents the same appearance (now) as all other lodes in the vicinity; that no lodes are now being worked in the vicinity; and that present smelter charges for ore treatment are $6 to $8 per ton.

A number of witnesses for plaintiff in rebuttal testified to some acquaintance with the locality involved before and after July 18, 1879; that they prospected it thoroughly, assayed samples, and found no lodes warranting location; that the quartz found had no value, and that,

while they cannot assert they so prospected the now Zeta lode, they are of opinion they did so far as it was exposed or indicated and as a part of the locality. Baxter, Yountz, and other witnesses visited the premises immediately before this trial. By way of conclusions from observation, Baxter testified that in 1878 he would have assayed what he saw in the small prospect hole before expending much upon it, and upon being asked if the appearance would have induced him to spend money to determine the character and value of the ore, he answered, "Yes." Yountz, in response to the question whether in 1879 the appearance of what he saw would have justified him to expend time and money to develop it, answered, "Yes." Barker and Corry, mining engineers presented by defendants, testified the Zeta lode would now justify an ordinarily prudent man in the expenditure of money in its development, and that he could reasonably expect to disclose a valuable mine.

[1] Before commenting upon this evidence it may be observed that, when a placer patent is applied for, the Land Department requires evidence in relation to the character of the land. Affidavits are presented by the applicant. If the proof is that lodes are known to exist within the placer claim, the applicant is required to survey them, and if not claimed and as known lodes included in his application he is required to exclude them, whereupon he enters and pays for only the net area of his placer claim, and patent issues to him, conveying said net area alone. If the proof is that lodes are not known to exist within the placer claim, the applicant enters and pays for the entire area of his placer claim, and patent issues to him, conveying the whole thereof; but the Land Department inserts in the nature of an exception that, should any lode be known or claimed to exist when the patent was applied for, it is expressly excepted or excluded (though not defined) from the grant. There is no warrant in law for this insertion, and it is broader than the law implies, if the statute implies any exception. Perhaps the reason it is held that the law does imply an exception of known lodes, contrary to the holding in the matter of patents by virtue of analogous laws and inappropriate to lodes and mineral lands, is that this Land Department practice confronted in the first case involving the question, if not given undue weight, at least suggested the exception—more suggested it than did settled principles of construction. Since lodes known to exist are excepted from a placer grant, title to them continues in the United States, and they are open to location as lodes in public land and by any one at any time.

[2] If located, in any controversy involving the respective rights of the lode claimant and the placer patentee, the burden is upon the lode claimant to prove the lode was known to exist when the placer patent was applied for. And the proof in effect impeaching the patent proceedings, if not the patent, for fraud, seeking to withdraw or except from a solemn grant over the seal of the United States premises prima facie conveyed by it, must be clear and convincing, in quality and quantity that inspires confidence and produces conviction.

[3] To so establish that a lode was known to exist when the placer patent was applied for, it must appear that at that time the lode was clearly ascertained and defined, and of such known extent and con-

tent that, in view of all circumstances and conditions affecting its worth, such as the importance locally attached to like lodes under similar conditions, ease or difficulty of development, facilities for ore treatment, cost of mining and reducing ores, reasonable probabilities of development, and the like, it then would have justified location, development, and exploitation, and because of which it and the area attaching to or excluded with it then were valuable, and more valuable than for placer mining purposes.

[4, 5] Float, outcrop, lodes, and abandoned lode locations, separately or combined, are not sufficient to constitute a lode "known to exist," within the exception of a placer patent. In addition must be the known quality above defined. And the reason is lodes exist throughout the mining country. Not one in hundreds justifies development and proves of value. No reason exists to except the valueless from placer patents or grants, and such patents issued or grants made without excluding them prima facie lodes of value did not exist. The issue is determined now by conditions as they were when the placer patent was applied for, even as though tried and determined then. Subsequent development and results, however marvelous, are immaterial. For if they are received in evidence and given evidentiary value, judgment is not based upon conditions as they were when the placer patent was applied for, but upon subsequent events, not consequences—the most fallible and dangerous of all criteria. The sanctity of a solemn grant of lands by the United States and the definiteness and certainty that should attach thereto and the stability of titles evidenced thereby, can only thus be preserved. See Iron Silver Case, 143 U. S. 405, 12 Sup. Ct. 543, 36 L. Ed. 201; Migeon v. Railway Co., 77 Fed. 256, 23 C. C. A. 156; Thomas v. Mining Co., 211 Fed. 106, 128 C. C. A. 33; Mason v. Mining Co., 214 Fed. 34, 130 C. C. A. 426.[1]

To revert to the evidence herein, all of subsequent development, disclosures, results, and conditions not consequent, is inadmissible and not considered. It will not do to contend that what is upon the premises now is some evidence of what was upon them then, for that is not the issue; it being what was *known* to be upon the premises then. There are circumstances, not here involved, in view of which such evidence would be competent for limited purposes. For instance, if a known lode was made to appear, to determine its course and distances, or if the placer patentee asserted no lode existed even at the time of trial, to rebut the assertion, or the like. Subsequent events conditionally admitted in a trial to the court are harmless, but in a trial to a jury would tend to obscure the real issue, to deceive, to injustice.

[6] Likewise evidence of annual labor performed by defendants. Defendants' attitude is not involved. If the Zeta lode was not known to exist when the placer patent was applied for, defendants' good faith aids them none; if it was known to exist then, their bad faith would not deprive them of the decree. The certified copies of recorded notices of location aforesaid by one of the placer patentees and by

---

[1] If Noyes v. Clifford, 37 Mont. 138, 94 Pac. 842, is for a rule more liberal to the lode claimant, it is at variance with the construction of the placer mining law declared by the Supreme Court of the United States, and so lacks authority.

Turner are inadmissible, in that by the law of the state when made they were void for defective verification, and so not evidence of anything. And it is not at all clear they were upon the lode involved. In view of the monuments in them referred to, the most that can be said is that they *may* have been. That subsequent to issuance of the placer patent 12 lode claim patents have issued for parts of the patented placer is immaterial, in that the lode patents are not evidence the lodes so patented, to say nothing of the Zeta lode, were known to exist on July 18, 1879. Iron Silver Co. v. Campbell, 135 U. S. 286, 10 Sup. Ct. 765, 34 L. Ed. 155.[2]

[7] The fact may be a striking illustration, however, of the situation induced by the prevailing construction of the placer mining law. The testimony of Baxter and Yountz is practically all that is competent and tending to sustain defendants' contention of a known lode. Tested by the rules hereinbefore set out, their testimony is wholly insufficient for defendants' purpose. The small prospect hole they casually saw once each prior to July 18, 1879, was the only exposure then of what now proves to be the Zeta lode. It does not appear this hole actually demonstrated that at that point was an ascertained and defined lode, clearly or at all. If the hole was in the disintegrated material at the surface or apex of the Zeta lode, neither Baxter nor Yountz observed the walls of the lode; neither of them testify it was a lode. There is no evidence of value at that point, then or now. Yountz's conclusion it was "pay ore" is unwarranted by any information he then had, or that appears now. It is a mere guess. If he saw gold and silver therein with the unaided eye (which may or may not indicate value), it would seem some one could see it now. So, likewise, his conclusion that what he there saw in 1879 would have justified development then.

Doubtless in the light of all the succeeding years he honestly so believes. Knowledge after the event is always easy, and to the untrained mind, influenced by time and results, and perhaps by regrets for lack of foresight in earlier years and for opportunities not grasped, it is difficult to consider only what was known then, to now judge as it would have judged then. It inclines to judge by the event.

To give the testimony of Baxter and Yountz all the value to which it is entitled, the most that can be said is that prior to July 18, 1879, they saw upon the premises involved what indicated a possible lode of possible mineral of value possibly sufficient to justify further exploration—so far short of a lode "known to exist" that, as they describe it, it is doubtful if it would support a location. See Chrisman v. Miller, 197 U. S. 320, 25 Sup. Ct. 468, 49 L. Ed. 770.

The defendants have failed to prove that on July 18, 1879, the Zeta lode was "known to exist." The court finds it was not known to exist, plaintiff's placer patent conveys title to the premises involved, and plaintiff is entitled to recover.

Decree accordingly.

[2] Note that this case is difficult to reconcile with the theory that a placer patent does not convey known lodes by defeasible title but excepts them altogether, in that it denies that the Land Department can thereafter issue patents to such lodes to the prejudice of the placer patentee, "who has a prior patent for the land."