SOUTH BUTTE MINING CO. v. THOMAS et al.*

(Circuit Court of Appeals, Ninth Circuit. October 6, 1919.)

No. 3256.

1. MINES AND MINERALS ⬅16—ONLY KNOWN LODES EXCLUDED FROM PLACER CLAIMS.

Under Rev. St. § 2333 (Comp. St. § 4632), relating to placer claims, it is only veins or lodes, the existence of which is known at the time of application for the placer patents, that are excepted therefrom in the event they are not applied for and granted upon the additional payment required.

2. CONTEMPT ⬅20—IN DISREGARDING DECREE.

Where the federal court quieted the title of a holder of a placer patent as against one who located a lode claim within the limits of the placer patent, and sought to sustain the location on the ground that the lode was known at the time the placer patent was issued, such decree is conclusive on the lode claimant, and for him to attempt to secure a lode patent from the Land Department is contemptuous conduct, and cannot be excused on the ground that the issuance of a lode patent would destroy the effect of the decree quieting title, for the question ultimately is one for the courts.

3. CONTEMPT ⬅28(1)—LACK OF CONTUMACY AS AFFECTING SENTENCE.

The failure of the record to show contumacy on the part of the contemnors is a proper circumstance to be considered in assessing the punishment for contempt.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied January 5, 1920.

Appeal from the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Suit by the South Butte Mining Company against Thomas B. Thomas and others. After a decree in its favor, complainant filed a petition for a rule requiring defendants to show cause why they should not be punished for contempt. From a judgment dismissing the contempt proceedings, complainant appeals. Reversed and remanded.

John A. Shelton, of Butte, Mont., for appellant.

Thomas B. Thomas, of Oakland, Cal., pro se.

Peter Breen, J. R. Jackson, N. A. Rotering, and H. K. Jones, all of Butte, Mont., for appellees Bucher and Wuerch.

Mrs. Percy William Anstett, pro se.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The appeal in this case is from the judgment of the court below that certain proceedings taken by the appellees, and hereinafter specified, did not constitute a violation of an injunction theretofore granted by final decree of the same court in the suit of the present appellant against the appellee Thomas, and dismissing the contempt proceedings that had been instituted against him and his grantees, the other appellees herein.

The suit in which the injunction was awarded was brought by the present appellant in the court below against the present appellee Thomas, to quiet its alleged title to certain placer mining claims in the state of Montana which had prior to June 9, 1906, been patented to the predecessors in interest of the mining company, in which suit the then defendant Thomas filed in addition to his answer a cross-bill, alleging that within the boundaries of the patented placer claims he entered, on or about December 1, 1909, then being a qualified citizen of the United States, and made a discovery therein of a vein of mineral-bearing quartz or rock in place showing a well-defined wall, and immediately thereafter located the same under the name Resurrection quartz lode mining claim, specifically describing it and alleging it to be the identical Resurrection quartz lode mining claim of which complaint was made in the bill, and that within 30 days thereafter he filed for record the certificate of such location, duly verified, as required by law.

The cross-bill further alleged, upon information and belief, that at the time of the respective applications for the placer patents the said Resurrection vein or lode was well known, and was of such a character as justified exploitation and the expenditure of money and time in developing the same, all of which was well known to the predecessors in interest of the complainant at the time of their respective applications for the placer patents; that subsequent to December 1, 1909, the cross-complainant performed the required annual work upon the said alleged Resurrection lode claim, and in all respects complied with the law relating thereto. Its prayer was that the bill be dismissed, and that the alleged title of the cross-complainant to the said lode claim be quieted. That suit resulted in a decree for the

complainant, and was brought here on appeal, where it was affirmed; the case being reported in 211 Fed. 105, 128 C. C. A. 33.

[1] As shown by the opinion of this court, the evidence offered by the mining company showed its title to the lands described in the bill by virtue of the placer patents, which were issued at different dates, all of which were prior in time to the location of the lode claim, and the proof on the part of the then appellant Thomas consisted—

"of a certified copy of the certificate of location of the Resurrection lode claim, recorded on January 7, 1910, and an amended statement of the location thereof, recorded January 28, 1910; a certified copy of the location notice of the Morning Star lode claim, of date July 2, 1877; a certified copy of the location notice of the Green copper lode claim, of date January 1, 1891; a certified copy of the location notice of the Pay Streak lode mining claim, of date August 2, 1881; also a map purporting to show the location of these various lode claims, and showing that the Pay Streak lode claim covered a portion of the ground which was subsequently embraced within the Resurrection quartz lode mining claim; that the Green copper lode claim adjoined the end thereof, and that the Morning Star was distant therefrom."

There was no evidence, other than the copies of the location notices of the three lode mining claims mentioned, to prove that, at the time when the predecessors in interest of the South Butte Mining Company made applications for the placer patents, any veins or lodes of quartz or other rock in place bearing valuable mineral deposits were known to exist. In holding the evidence of the cross-complainant insufficient to overcome the case made by the placer patents, we said:

"First, the application for the appellee's placer patent for the land within which the Resurrection claim is located is prior by 4 years to the Pay Streak location, and 14 years prior to the Green copper location; second, the mere fact that mineral lode locations were made is not proof that the ground on which they were located contained a vein or lode within the meaning of section 2333 of the Revised Statutes (U. S. Comp. St. 1901, p. 1433). A mere location of an alleged vein or lode is not sufficient to prove that a vein or lode was known to exist. Migeon v. Montana Central Ry. Co., 77 Fed. 249, 23 C. C. A. 156. The lode or vein which is known to exist, so as to be excluded from the patent, must be one which contains mineral of such extent and value as to justify expenditures for the purpose of extracting it. Migeon v. Montana Central Ry. Co., 77 Fed. 249, 23 C. C. A. 156; Casey v. Thieviege, 19 Mont. 342, 48 Pac. 394, 61 Am. St. Rep. 511."

The statute which lies at the foundation of the case is section 2333 of the Revised Statutes (Comp. St. § 4632), which reads as follows:

"Where the same person, association, or corporation is in possession of a placer claim, and also a vein or lode included within the boundaries thereof, application shall be made for a patent for the placer claim, with the statement that it includes such vein or lode, and in such case a patent shall issue for the placer claim, subject to the provisions of this chapter, including such vein or lode, upon the payment of five dollars per acre for such vein or lode claim, and twenty-five feet of surface on each side thereof. The remainder of the placer claim, or any placer claim not embracing any vein or lode claim, shall be paid for at the rate of two dollars and fifty cents per acre, together with all costs of proceedings; and where a vein or lode, such as is described in section twenty-three hundred and twenty, is known to exist within the boundaries of a placer claim, an application for a patent for such placer claim which does not include an application for the vein or lode claim shall be construed as a conclusive declaration that the claimant of the placer claim has no right of possession of the vein or lode claim; but where the existence of a vein or

lode in a placer claim is not known, a patent for the placer claim shall convey all valuable mineral and other deposits within the boundaries thereof.".

Long before the present case arose this court had occasion to construe that section, in the case of Migeon et al. v. Montana Cent. Ry. Co., 77 Fed. 249, 23 C. C. A. 156, where we said of it:

"This section of the statute was primarily intended for the benefit and protection of the locators of placer claims. If a lode is known to exist within the boundaries of a placer claim, the applicant for a patent must state that fact, and then, by paying $5 an acre for that portion of the ground, and $2.50 an acre for the balance, a patent will issue to him, covering both the lode and placer ground; but, if the lode is known to exist, and is not included in the application for a patent, then it will be construed as a conclusive declaration that the owner of the placer claim has no right of possession, by virtue of his patent for the placer ground, to the vein or lode. It matters not whether there is a lode or vein actually within the limits, which subsequent developments may prove, if it is not known to exist at the time of the application, the patent for the placer claims will include such lode or vein. In such cases the Supreme Court has repeatedly declared that it is not enough that there may have been some indications, by outcropping on the surface, of the existence of lodes or veins of rock in place bearing gold or silver or other precious metals to justify their designation as 'known veins or lodes'; that, in order to meet that designation, the lodes or veins must be clearly ascertained, and be of such extent as to render the land more valuable on that account, and justify their exploitation. Mining Co. v. Reynolds, 124 U. S. 374, 383, 8 Sup. Ct. 598, 603 [31 L. Ed. 466]; U. S. v. Iron Silver Min. Co., 128 U. S. 674, 683, 9 Sup. Ct. 195, 199 [32 L. Ed. 571]; Iron Silver Min. Co. v. Mike & Starr Gold & Silver Min. Co., 143 U. S. 394, 404, 424, 12 Sup. Ct. 543, 553 [36 L. Ed. 201]; Sullivan v. Mining Co., 143 U. S. 431, 12 Sup. Ct. 555 [36 L. Ed. 214]; Brownfield v. Bier [15 Mont. 403] 39 Pac. 461, and authorities there cited This construction as to the meaning of section 2333 is, in our opinion, founded in reason, and is in harmony with the construction given by the courts to the other sections of the statute relative to the rights of locators of mining claims upon the public lands of the United States. But, in any event, the rule, as above stated, is now too well settled to be departed from.

"The decisions of the Supreme Court upon controversies arising between mineral claimants on one side and parties holding town-site patents on the other are applicable to this class of cases. The doctrines therein announced are directly in line with the cases we have referred to. In such character of cases the court has repeatedly declared that, under the acts of Congress which govern such cases, in order to except mines or mineral lands from the operation of a town-site patent, it is not sufficient that the lands do in fact contain minerals, or even valuable minerals, when the town-site patent takes effect; but they must at that time be 'known' to contain mineral of such extent and value as to justify expenditures for the purpose of extracting them and, if the lands are not known at that time to be so valuable for mining purposes, the fact that they have once been valuable, or are afterwards discovered to be still valuable, for such purposes, does not defeat or impair the title of persons claiming under the town-site patent. Deffebach v. Hawke, 115 U. S. 393, 404, 6 Sup. Ct. 95, 101 [29 L. Ed. 423]; Davis' Adm'r v. Weibbold, 139 U. S. 507, 525, 11 Sup. Ct. 628, 635 [35 L. Ed. 238]; Dower v. Richards, 151 U. S. 658, 663, 14 Sup. Ct. 452, 454 [38 L. Ed. 305]."

As will be seen from the cases cited, it is only veins or lodes the existence of which is known at the time of the application for the placer patents that are excepted therefrom, in the event they are not applied for and granted upon the additional payment required; so that, even had the patents in question in terms exempted therefrom all veins or lodes within their boundaries, known to exist at their date or at any other time after the application therefor, such attempted ex-

260 F.—52

tension of the statutory exemption would have been absolutely void and of no effect. Iron Silver Min. Co. v. Mike & Starr Co., 143 U. S. 394, 402, 419, 12 Sup. Ct. 543, 36 L. Ed. 201; Roberts v. Southern Pacific Co. (C. C.) 186 Fed. 934, 936.

[2] But what the present appellee Thomas and his coappellees, who derived whatever rights they have, if any, from him, undertook to do, according to the record, was—notwithstanding the final decree of the court below, affirmed by the judgment of this court, quieting the title conveyed by the placer patents to the whole of the ground covered by them—to make subsequent application to the Land Department for the government title to the aforesaid Resurrection lode claim, upon the ground that it was a known lode at the time of the application for the respective placer patents. It was that precise fact that Thomas had the opportunity to prove, and actually undertook to prove, in the suit to quiet the title to the whole of the property embraced by the placer patents, and which he wholly failed to do, as has been shown, resulting in the final decree against him. To permit him, or any of those claiming under him, to again litigate or assert that claim in any forum or department of the government, would, in our opinion, be a clear violation of the fundamental principle that the final decree of every court having jurisdiction of the parties and of the subject-matter is thereafter conclusive of all matters so actually litigated and determined.

The views of the learned judge of the court below, controlling his judgment here appealed from, may be seen from the following excerpt from his opinion:

"In the Realty Co. Cases [D. C.] 218 Fed. 963, and [D. C.] 215 Fed. 999, this court referred to the discord between cases involving placer patents and cases involving other land patents determined by the Supreme Court, and the grave consequences to placer patentees. By these Supreme Court decisions in the former cases it is settled that, though a placer applicant submits proof of no known lodes and pays for the entire area within the bounds of his claim the patent conveys no title to known lodes within that area. Title to them remains in the United States. They are public mineral lands, open to future identification, location and patent, and of course subject to no laches or limitations. The placer patent is valid, and to no extent void or voidable; the known lodes being exceptions, reservations, exclusions, even as the like in any grant or deed. Congress has vested the Land Department with exclusive jurisdiction, so far as finality is concerned, to determine the character of public lands. No court decision thereon is binding upon said Department. Despite the decree in the instant case, the Land Department can determine that the lode is a 'known lode'—can patent it. And if it does so, not ex parte, but upon due notice and hearing, its decision is final, binding everywhere, and makes of said decree a scrap of paper. Vide the case first cited, wherein subsequent to placer patent issued by it, and within the patent's bounds, the Department issued 12 patents for lodes by it determined to be 'known lodes'!"

The views so expressed we think erroneous, for two reasons: First, because they entirely overlook or ignore the conclusive effect of the final decree that has been alluded to; and, secondly, because of the notion thereby indicated that—

"Despite the decree in the instant case, the Land Department can determine that the lode is a 'known lode'—can patent it. And if it does so, not ex parte, but upon due notice and hearing, its decision is final, binding everywhere, and makes of said decree a scrap of paper."

Iron Silver Mining Co. v. Campbell, 135 U. S. 286, 10 Sup. Ct. 765, 34 L. Ed. 155, presented a case in ejectment, where both parties had a patent from the government; the defendant to the action a patent for a placer claim, and the plaintiffs a patent for a lode claim on the same ground. The case was tried in the lower court without a jury, resulting in findings of fact and a judgment for the plaintiffs. The findings and conclusions of the trial court were in part as follows:

"That the mining ground and property described in the pleadings in this action were a part of the public domain of the United States until the title thereof passed out of the United States by the issuing of patents, as hereinafter set forth.

"That the said patent of the Sierra Nevada lode mining claim was issued to the said plaintiffs and their grantors and predecessors in interest at the time thereto stated, and by duly executed and recorded deeds of conveyance the title to the land mentioned and described in the said patent and the complaint in this action has been conveyed to and is seized, owned, and possessed by the said plaintiffs, and was so seized, owned, and possessed by them at the time of the commencement of this action.

"That on the 13th day of November, 1878, said William Moyer duly made application in the proper United States land office to be allowed to enter and pay for a patent for said William Moyer placer mining claim, being survey lot No. 300 and mineral entry No. ——; that on the 21st day of February, 1879, said William Moyer was allowed to and did make entry in said land office of the United States, and paid for the said placer claim, and that on the 30th day of January, 1880, the said William Moyer placer patent was issued to the said William Moyer for the tract of land described in said placer patent, and that by virtue of duly executed and recorded deeds of conveyance the said defendant company has become the owner of and seized of all the right, title, and interest in and to the said tract of land described in and conveyed by the said placer patent.

"That the ground described in said patent of plaintiffs for the said Sierra Nevada lode claim is principally located or situated within the exterior boundaries of the tract of land described in said placer patent for the said William Moyer placer claim and is a part of the same land, and the maps introduced in evidence and contained in the bill of exceptions and record correctly delineate the surface of the ground comprised within the exterior boundary lines of the said placer patent and the said lode patent, respectively.

"And the court finds, as conclusions of law from the foregoing findings of fact, that it is conclusively presumed and found, from the face of said Sierra Nevada lode patent, that the said Sierra Nevada lode claim had been duly discovered, located, and recorded, and owned by the said patentees in said Sierra Nevada lode patent and their predecessors in interest (the said plaintiffs) within the exterior boundaries of the said tract of land described in said William Moyer placer patent, before the time of the said application for the said placer patent, and the mining ground described in the said complaint and conveyed by the said lode patent is excepted out of the grant of the land described in and conveyed by the said placer patent."

In reversing the judgment for the plaintiffs, the Supreme Court said, among other things:

"The real principle on which the plaintiffs relied to establish the superiority of their claim for the lode in controversy is that it was a known lode, within the meaning of the act of Congress on that subject, at the time of the application for the Moyer patent, and therefore, by the act of Congress on that subject, the title to it did not pass to the grantee in that patent. If the fact were proved that the Sierra Nevada lode was a known lode, within the limits of the placer patent obtained by Moyer at the time of his application, the contention of the plaintiffs is sound. But notwithstanding nearly all

the testimony, particularly all the oral testimony found in the bill of exceptions, was introduced for the purpose of proving the existence of this lode, and that it was known to Moyer or his grantor, and in refutation of that proposition, the court in its finding of facts makes no finding on that subject. It was obviously the opinion of the court, and it is the ground on which defendants in error support its judgment here, that the patent issued by the government is conclusive evidence that such vein was known, so as to authorize the Land Department to issue a patent for it as being reserved out of the grant in Moyer's patent.

"It is very singular that the patent to Campbell and others for the Sierra Nevada claim makes no reference to this reservation in Moyer's patent, and no statement that the existence of the lode was known to anybody at the time the Moyer patent was applied for or when it was granted. There is nothing on the face of this patent to show that there was any contest before the Land Department on this question of the existence of the vein, and the knowledge of it on which the validity of the patent is now supposed to rest. We have, therefore, the junior patent, which is held to defeat the prior patent, with no reference to any contest between the different claimants before the land office, and we have the court, in deciding the present case, while hearing the testimony which would defeat or sustain that patent, utterly ignoring it, and making no finding upon the subject which the defendants in error believe to be involved in the issue.

"The reason of this action by the court is very plain. It proceeds upon the idea that it is conclusively presumed and found, from the face of the Sierra Nevada lode patent, that the said lode claim had been duly discovered, located, and recorded within the exterior boundaries of the land described in the said Moyer placer patent before the application for the said Moyer patent. As there is not a word said on the face of the Sierra Nevada lode patent on this subject, we must look for some inference of law, rather than to the statement of facts, upon which this presumption conclusively arises.

"That presumption of law, as explained by counsel, is that, since the law under which the Moyer patent issued reserved from its operation any known vein or lode within the exterior boundaries, it is presumed that, when the officers of the Land Department issued the patent for the Sierra Nevada lode, they made such inquiries into the question of the existence of this lode, and its being known to the grantee in the Moyer patent, as authorized it to decide that question, and that that decision is binding and conclusive forever upon all parties. We are not able to agree with this statement of the law. * * *

"We are not ignorant of the many decisions by which it has been held that the rulings of the land officers in regard to the facts on which patents for land are issued are decisive in actions at law, and that such patents can only be impeached in regard to those facts by suit in chancery brought to set the grant aside. But those are cases in which no prior patent had been issued for the same land, and where the party contesting the patent had no evidence of a superior legal title, but was compelled to rely on the equity growing out of frauds and mistakes in issuing the patent to his opponent.

"Where each party has a patent from the government, and the question is as to the superiority of the title under those patents, if this depends upon extrinsic facts not shown by the patents themselves, we think it is competent, in any judicial proceeding where this question of superiority of title arises, to establish it by proof of these facts. We do not believe that the government of the United States, having issued a patent, can, by the authority of its own officers, invalidate that patent by the issuing of a second one for the same property. If it be said that the question of the reservation of this vein as a known lode under the law on that subject makes a difference in this respect, and that the land office has a right to inquire whether such lode existed, and whether its existence was known to the patentee of the first patent, we answer that a patent, issued under such circumstances to the claimant of the lode claim, may possibly be such prima facie evidence of the facts named as will place the parties in a condition to contest the question in a court.

"But we are of opinion that it is always and ultimately a question of ju-

dicial cognizance. The first patent conferred upon Moyer the right to this vein and to all other veins within the limits of his fifty acres of placer claim. There is excepted from that grant any lode existing and known at the time application was made for his patent. Whether such a lode did exist, and whether it was known to him, is a question which he has a right to have tried by a court of justice, and from which he cannot be excluded by the subsequent action of the officers of the Land Department."

If, as the court in that case distinctly adjudged, the fact as to whether or not, at the time the placer claimants made their application for a patent, there was within the boundaries of their claim an existing vein or lode, was a matter for judicial cognizance, and not a matter for the determination of the officers of the Land Department, where both the placer and the lode claimants had a patent duly issued by the government, manifestly all the more is such fact of knowledge a question for judicial cognizance where the placer claimant has a patent and the lode claimant has none.

[3] For the reasons stated the judgment is reversed. The case is therefore remanded, and it follows that the appellees must be adjudged guilty of contempt. The failure of the record to show contumacy on the part of the appellees cannot affect the judgment of this court, but is a circumstance proper for the consideration of the court below.