## McKAY v. MESCH.

(District Court, D. Montana. July 12, 1921.)

### No. 83.

1. **Mines and minerals ⊜⇒44—General exception of known lode in placer patent effective.**

   Under the law as settled by the Supreme Court, the issuance by the Land Department of a patent for a placer mining claim is not conclusive that there is no known lode therein, and a general exception in the patent of any known lode may be invoked by any subsequent claimant of a lode, though the effect may be to lessen or wholly destroy the value of the placer claim.

2. **Mines and minerals ⊜⇒43—Lode crossing placer claim held not excepted from the patent as a known lode.**

   A lode crossing a patented placer claim *held*, on the evidence, not identical with a lode known to exist prior to the patent and not excepted from the patent as a "known lode."

In Equity. Suit by Alexander McKay against Morie Mesch. Decree for complainant.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

E. B. Howell, of Butte, Mont., and George R. Allen and Lyman H. Bennett, both of Virginia City, Mont., for plaintiff.

M. M. Duncan, of Virginia City, Mont., for defendant.

BOURQUIN, District Judge. This is a final hearing in a suit by plaintiff to quiet title to premises conveyed by placer patent issued upon an application made in December, 1900, against defendant's claim of a known lode at that date.

[1] In that behalf counsel contends, as he did in Barnard Realty Co. v. Nolan (D. C.) 215 Fed. 996, that the patent conveyed title to any known lode, is not subject to collateral attack, and any attack, direct or collateral, is barred by the six-year limitation of the act of 1891 (Comp. St. § 5114). The argument proceeds that in disposal of lands the Land Department has no more power than Congress by statute has given it; that any departmental act in excess of such power is void; that whether lands are subject to disposal, patentable, and of the character applied for, is the department's duty to determine at time of patent; that patent issued is presumptive that this duty has been in all things performed, conclusive against collateral attack, and open to disproof only in a timely direct action to vacate the patent, based on fraud or mistake, brought by the United States within the limitation aforesaid; that in any case the patent conveys the title, if the lands are open for disposal under general laws; that if, in the patent, the department inserts exceptions unauthorized, or general, undefined, and so broad that they may defeat the grant, they are void; that the placer statutes, in their general provision, construed in effect that placer patents shall not issue for known lodes, differ none from homestead and analogous statutes in like, but express, provisions that patents by virtue of them shall not issue for lodes or mineral lands; that the placer statutes thus furnish less warrant than the latter for the department's insertion in patents of general and undefined exceptions of known lodes, and the language of the placer statutes afford no ground for judicial construction different from the latter in respect to what the patents convey; that the exceptions so inserted in placer patents and in the patent herein are general and undefined, assume to except, not only known lodes, but in effect also 25 feet of placer land on each side thereof, and are broad enough to defeat the grant, as they on occasion have done (Clark Montana Realty Co. v. Ferguson [D. C.] 218 Fed. 965); that to construe the placer statutes to justify these exceptions, and thus to render the patents indefinite and on occasion void, contrary to the construction of the like homestead and analogous statutes, and contrary to the effect of patents by virtue of them, is insupportable upon principle; that upon application for placer patents, as in all other cases it is the department's duty as aforesaid, and it proceeds to perform this duty by taking evidence as to the character of the land and the existence or otherwise of known lodes, including affidavits by an officer of the United States, a deputy mineral surveyor, who examines the lands and reports in respect thereto; that, the lands thus found to be placer in character and known lodes non-

existent, the department sells and receives payment for the whole, and issues patent for the whole; that the rule of the Iron Silver Cases (109 U. S. 550, 3 Sup. Ct. 339, 27 L. Ed. 1028; 116 U. S. 697, 6 Sup. Ct. 601, 29 L. Ed. 774; 124 U. S. 382, 8 Sup. Ct. 598, 31 L. Ed. 466; 128 U. S. 680, 9 Sup. Ct. 195, 32 L. Ed. 571; Id., 143 U. S. 431, 12 Sup. Ct. 555, 36 L. Ed. 214), in effect contrary to all the foregoing, is based on strained inference and construction of the placer statutes discordant with that of the homestead and analogous statutes, and was in part induced by the absence of any statute of limitation, by reason of which absence it was immaterial whether or not legal title to known lodes was conveyed by placer patents, for that suit to cancel the patent by the United States would not be ever barred. And for support appeal is made to Burke v. Railway Co., 234 U. S. 669, 34 Sup. Ct. 907, 58 L. Ed. 1527.

The contention and argument in the main are settled law, the principles of conveyances and grants, private and public, confirmed by numerous decisions of the Supreme Court. But so, too, is the exceptional doctrine in respect to the placer statutes and patents settled law by virtue of the Iron Silver Cases aforesaid. And although in his criticism of it counsel but voices, it is believed, the judgment of the major portion of bench and bar of the mining states at all times, lesser courts can but apply it. The Supreme Court created it; the Supreme Court maintains it; the Supreme Court alone can take it away. So far from the latter by the Burke Case, the Supreme Court, after citing and vindicating all the principles and cases that make against this exceptional doctrine, merely refers to it, but with approval.

If lodes were conspicuous upon the land, like a stone wall or growing trees, and so indubitably "known," general and undefined exceptions of them would be valid, and their existence easily demonstrated in any suit. But they are not. Too often it is that their existence, first discovered long after patent, is seized upon by the covetous and speculative to attack the patent, 10, 20, 40 years subsequent to its issuance, in the hope that the lode may before court or jury be given the character of a "known lode" by the recollections, real or imaginary, of ancient witnesses. And one defeated, another takes his place, ad infinitum. In consequence, placer patent titles to lands of great value are never finally quieted and are always doubtful, in theory at least. Instances have occurred where, upon such recollections, years subsequent to patent, lode after lode were so carved out until the entire premises had been held to have been excluded ab initio by the patent itself, rendering the latter a mere scrap of paper, conveying nothing. Such might be its fate in this and in any case.

[2] To proceed to the merits, however, the placer claim in the instant case is located for 2,700 feet along a creek, hills rising on both sides, and is 200 feet wide. The lode claim crosses the placer, northerly and southerly, at a somewhat acute angle, and is 1,400 feet long and 550 feet wide. It is surveyed for patent, and therein its lines do not cross or conflict with the placer, but follow the latter's lines as far as possible, save where the claimed lode line crosses the placer; and

there the lode claim survey also crosses the placer in a strip 25 feet on each side the lode line.

This 50-foot strip is equidistant from the side lines of the lode claim, connects the end portions of the latter, otherwise separated by the placer, and be it noted is the only conflict area, and for which alone the lode claimant defends. There is evidence tending to prove that for 20 years before the placer patent application in December, 1900, a lode that probably crosses the placer premises was known and was occasionally worked at some profit on or near the latter. It is not necessary to detail this evidence, nor to determine its sufficiency to give this lode the character of a "known lode" at the vital time to exclude it from the patent, because it does not appear to be the lode at the point of surveyed crossing of the placer and that is now claimed by defendant. On the contrary, it appears to be otherwise.

Despite some ambiguous opinions that they are one and the same lode, the facts demonstrate that the former lode crosses the placer at a point 150 feet south of the crossing of the latter lode, and, proceeding northerly, on a course 45 degrees westerly of the course of the latter. The workings permit no just inference that the lodes are one; the exposure of the former nearest any on the latter upon the surveyed crossing of the placer being 250 feet distant. Witnesses state their belief that the former lode, formerly known to them as the Octopus, is the lode now claimed by defendant as the Silver Bar. So it is, but only in part—the part south of the placer, and not including the crossing and lode thereon claimed by the defendant as the Silver Bar. Defendant's workings, plat, and testimony of themselves establish this. Where the former lode crosses the placer, defendant asserts no claim, and there is no conflict; and in respect to the latter lode, now claimed by defendant, there is no evidence it was known at the date of application for the placer patent.

This finding determines the case for plaintiff. Decree accordingly.