## UNITED STATES v. DOUGHERTY.

(District Court, D. Montana. December 28, 1921.)

No. 86.

**1. Public lands ⊂⇒120—Homestead patent for land in fact nonmineral held not subject to cancellation because of some known mineral thereon.**

Defendant filed a homestead entry, performed all required conditions made final proof, and received a patent for land of value for agricultural purposes. The land had been prospected for minerals during 50 years, and an ore vein therein had been worked at intervals, but without sufficient production to justify further development. Defendant had resided on the land for 6 years prior to his entry, had filed mineral claims thereon, and at times had taken out and sold some ore. He also produced garden and hay crops and conducted a small dairy business. *Held*, that the land was nonmineral in a legal sense at the time of entry and final proof, and that defendant's patent was not subject to cancellation for fraud, because of the existence of mineral thereon to the extent described.

**2. Public lands ⊂⇒120—Homestead patent not subject to cancellation because of immaterial false representations as to minerals.**

Where, at the time of a homestead entry and final proof, the land was in fact nonmineral and subject to agricultural entry, the patent issued is not subject to cancellation because the entryman made false oath that there was no known mineral thereon, since he secured nothing to which he was not otherwise entitled.

**3. Public lands ⊂⇒29—Homestead entryman held not estopped by holding mineral claims on the land.**

The fact that a homestead entryman was maintaining mineral claims on the land at the time of his entry and final proof *held* not to estop him from exercising his homestead right, if otherwise entitled thereto.

In Equity. Suit by the United States against Patrick Dougherty. Decree for defendant.

John L. Slattery, U. S. Atty., W. H. Meigs, Asst. U. S. Atty., and Benj. F. L. Heron, all of Helena, Mont., for the United States.

Wheeler & Baldwin, of Butte, Mont., for defendant.

BOURQUIN, District Judge. In this suit to cancel a patent for 120 acres of land (issued to defendant in 1917 upon final proof in 1916 in respect to his homestead entry of 1913), the bill alleges defendant secured the patent by fraud, in that therein he falsely represented that no one claimed or worked the land for mining purposes, that upon it were no indications of minerals, and that it was essentially nonmineral land, whereas in truth and fact defendant then was claiming and working the land for minerals, and it was essentially mineral in character.

[1] The evidence is that the land is about 18 miles from Butte, and it and the vicinity have been subjected to the scrutiny of prospectors for minerals for perhaps 50 years. No paying and operating mines have resulted, though lode claims are to some extent maintained. Upon the land in controversy is at least one rather persistent fissure from a few inches to a few feet in width, which for perhaps all the years aforesaid has been subjected to desultory, crude, and more or less superficial exploitation for minerals.

The lure thereto is that, in the filling of this fissure and at and adjacent to the surface, appear seams of quartz from the barely appreciable to several inches in width, in which occasionally have been found ores from mere samples to a few pounds, carrying bromides and chlorides of silver up to 1,400 ounces per ton, and gold up to $8 per ton. In respect to these ores there is no persistency or continuity in any direction, and in depths so far attained they have practically disappeared. The work done upon this fissure consists of cuts, holes, and shafts, and two tunnels, one a crosscut 600 feet long, and one following the fissure for some 900 feet, and attaining a depth of 200 feet. Whether the former tunnel reaches the fissure does not appear, and in the latter is disclosed nothing of value. The evidence is silent in respect to how much of this work was done by defendant.

In 1906 he acquired by location and purchase three lode claims along the fissure and extending across and beyond the land in controversy. In 1907 he established residence upon the land and claims, maintained to this day. From the beginning, to a substantial extent, he cleared, cultivated, and improved the land for a home and agricultural purposes, and to some extent prospected and worked the claims in endeavor to find ores in paying quantities. In the latter he was disappointed, though, a few pounds at a time and place, he secured and shipped ores as follows: December, 1906, 8,300 pounds, receiving $321; July, 1907, 14,700 pounds, receiving $619; September, 1909, 16,700 pounds, receiving $464.

His agricultural returns were of garden and hay crops, aggregating about 16 acres in the year of homestead final proof, and the dairy proceeds of some 6 cows. His ill health prevented return to the mines of Butte. On this land was pure air, fuel, home, comparative indepen-

dence, and at least a meager living, which occasionally might be improved by lucky finds of ores in times and labor otherwise unappropriated; and always the Argonaut's hope, however faint and ill-founded, that within the land there might be a source of the rich surface indications, a body of profitable ore, which it might be his good fortune to some time find. Incidentally, this is the dream of all homesteaders —in the mountain districts, of wealth of gold, silver, and copper; in the plains, of coal, oil, and gas.

So in 1913 he made homestead entry upon the land, and in 1916 final proof. In all things he complied with the homestead laws and performed all conditions precedent to earn the patent to the land. After final proof he recovered and shipped ores as follows: October, 1917, 24,500 pounds, receiving $194; October, 1920, 2,500 pounds, receiving $50. It does not appear to what extent defendant maintained the claims by annual labor, save that after final proof and in 1919 and 1920 he did so, and filed the usual affidavits.

He in substance testifies that the land clearly of agricultural value, and time and experience rendering doubtful its mineral value, in 1913 he concluded to and did enter it as a homestead and for a home; that in 1919 he learned plaintiff's agents were investigating the land and asserting it to be mineral, and to protect his right and to guard against other prospectors, he reasserted his mineral claims, performed annual labor, and filed proof aforesaid. Aught occurring subsequent to final proof, if competent, is of little evidentiary value; for the character of the land at final proof cannot be determined by the result of later development. See Clark, etc., Co. v. Ferguson (D. C.) 218 Fed. 964. If the land was not of known mineral character at final proof, the good fortune of the entryman in subsequent development of a bonanza would be immaterial to the issue.

Plaintiff's examiners, Galbraith and Holly, both mining engineers, in substance testify to careful examination of the land; that they would "pass" applications for lode claim patents upon the fissure, but that the barrenness of development at depth has destroyed hopes inspired by the values at surface; that now they would not be justified, nor would the average prudent man be justified, in further development, there being no basis for reasonable expectation to thereby develop a paying mine; that they would not recommend further development, save to some one with abundant money to spend, the loss of which would not embarrass him, and who was disposed "to take a long chance."

This testimony by witnesses in plaintiff's employ and of vocation interested in furthering mining development, is candid and fair, in accord with facts, and admits of but the conclusion that at the time of final proof the land was not known to contain minerals or indications of minerals to an extent warranting the average prudent man to expend money and labor in development, not known to contain them to an extent inspiring reasonable expectation that such development would disclose a paying mine, not known to be more valuable for mining than for agricultural purposes; that is to say, the land was not known to be mineral in character. And such is the finding of the court.

It is the too common case of rich samples, seams, and pockets in the outcrop, barrenness at depth, and no body of ore that is profitable to develop and extract.

Fifty years and two generations of prospectors that radiated from Butte have proven it in respect to this land. Evidently it is in the twilight zone, and could be legally patented to the first bona fide applicant, be he mineral or agricultural; for the laws are liberal to both, and in a close case will not discredit the first claimant's estimate or valuation, destroy his hopes, or deny his right. It is obvious that in respect to this land defendant did not in all things exercise good faith towards plaintiff. In his entry in 1913 he made oath that no portion of the land "is" claimed or worked for mineral, and in his final proof in 1916 he made oath that there "are" no indications of minerals upon the land.

[2] In view of the evidence herein, and the character of proof incumbent upon plaintiff to justify cancellation of a patent (U. S. v. Anderson [D. C.] 238 Fed. 649), it cannot be found that this oath in 1913 was false. There is no evidence he presently worked or even claimed the land for mineral, and his homestead entry may be taken as an abandonment of the mineral claims, even as his testimony indicates. And this without inconsistency with the ore shipments of 1917 and 1920, and the performance of annual labor in revival of the claims in 1919 and 1920, the latter for protection in event of this suit and against prospectors inclined "to take a long chance."

His oath of 1916, however, was false. It was perjury by reason of statute, and for which he might have been prosecuted. But it does not warrant cancellation of the patent. So, likewise, if the oath of 1913 was false; for, since the land was not mineral in character, had he not made the merely evidentiary false representations aforesaid, nevertheless the patent would have issued to him as a patent duly earned. Hence, within the law of fraud and to which plaintiff, as others, is subject (U. S. v. Company, 128 U. S. 676, 9 Sup. Ct. 195, 32 L. Ed. 571), these false representations were not material to the contract, for that by reason of them defendant secured nothing to which he was not otherwise entitled, and plaintiff was deprived of nothing it was not otherwise bound to yield to him. For the land not mineral in character, it was subject to entry and patent as a homestead, however limited its value for agricultural purposes. See U. S. v. Kostelak (D. C.) 207 Fed. 450. Rescission and cancellation are not decreed, where the false representations work no injury to the plaintiff, as here.

[3] If at time of entry and final proof defendant was maintaining his mineral claims upon the land, his inconsistency, though of evidentiary value, does not work an estoppel, as in some cases it might. See Bunker Hill Co. v. U. S., 226 U. S. 550, 33 Sup. Ct. 138, 57 L. Ed. 345; U. S. v. Company, 128 U. S. 683, 9 Sup. Ct. 195, 32 L. Ed. 571. It would not affect the issue here, which is only the known character of the land at final proof. Nor is any estoppel claimed.

Decree for defendant.